## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:                                                    Case No. 20-10135-KHT
Jill S Hanauer xxx-xx-4003,                               Chapter 7
                    Debtor

_____

Bank of the West, its successors and/or
assigns
                    Movant,

vs.

Jill S Hanauer xxx-xx-4003;
and Tom H. Connolly, Trustee,
                    Respondents.

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

       Bank of the West, its predecessors, successors and/or assigns, ("Movant"), by and through its attorney, Christopher A. Young, respectfully moves that this Court, pursuant to 11 U.S.C. §362(d), enter Orders as more fully described below, granting relief from the Automatic Stay provisions of 11 U.S.C. §362(d) and in support thereof states the following:

       1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §157, and the related procedural Orders entered by the United States District Court of Colorado.

       2.     On January 8, 2020, the Debtor filed a petition for relief under 11 U.S.C. Chapter 7 of the United States Bankruptcy Code.

       3.     The Debtor is indebted to Movant pursuant to a Colorado Gold Equity Choice Credit Agreement ("Note") secured by a Second Deed of Trust.

       4.     The property identified under said documents from which Movant has a valid lien and security interest is described as follows:

       **LOT 29 EXCEPT THE NORTH 7.5 FEET THEREOF AND THE NORTH ½ OF LOT 28, EXCEPT THE REAR 6 FEET OF SAID LOTS, BLOCK 238, CAPITOL AVENUE SUBDIVISION, CITY AND COUNTY OF DENVER, STATE OF COLORADO.**

       **FOR TITLE REFERENCE, SEE DEED IN DOCUMENT #2016177750**

1

Also known as: **1143 Harrison St, Denver, CO 80206**.

5.　　Movant has a valid lien and security interest in said property as evidenced by copies of the Note and properly recorded Deed of Trust attached hereto as **Exhibits A** and **B**.

6.　　In addition to Movant's lien, the property is encumbered by a senior lien in favor of Wells Fargo in the approximate amount of $458,184.52, a third lien in favor of Joe Hanauer in the approximate amount of $148,276.30, and a judgment lien in favor of Bank of the West in the approximate amount of $235,965.92, as evidenced by Debtor's Schedule D.

7.　　The Debtors are currently in default under the terms of said documents and under the terms of the Bankruptcy. The Debtors owe Secured Creditor an outstanding principal balance of $83,961.96, plus applicable interest, penalties, fees and costs, totaling $93,015.92. The Debtors have not made the agreed upon payments for the months of February 2019 thru January 2020, plus attorney fees/costs of $1,131.00. A payment history is attached hereto as **Exhibit C** and made a part hereof.

8.　　Movant requests that the automatic stay be terminated with respect to said property for cause, including lack of adequate protection of Movant's interest in said property.

9.　　The commercially reasonable value of the Property is approximately $690,000.00, as evidenced by the Debtor's Schedules A/B and D, attached hereto as **Exhibit D** and made a part hereof.

10.　　The Debtor has no equity in the Mortgaged Premises, as the sum of the encumbrances on the Mortgaged Premises exceeds the fair market value by $245,442.66, and this property is not necessary for an effective reorganization. *See* 11 U.S.C. §362(d)(2)(a).

11.　　For the above and foregoing reasons, Movant asserts cause exists sufficient to waive the requirement of Bankruptcy Rule 4001(a)(3), therefore allowing an Order to be effective upon this Honorable Court's signature.

12.　　On January 17, 2020, as evidenced by the Affidavit pursuant to the Service Member Civil Relief Act of 2003, Laura Robles of Prober & Raphael (Movant's California Counsel), being first duly sworn and over the age of 18, performed a search on the Department of Defense Manpower Data Center (DMDC) information data banks. Said data banks did not possess any information indicating that the Debtor is currently on active duty as to all branches of the Military. A copy of the Military Status Report is attached hereto as **Exhibit E**.

WHEREFORE, the Movant prays:

That as provided under 11 U.S.C. §362(d), this Court grant relief from the automatic stay against the Respondent(s) to allow the Movant to foreclose on and/or take possession and control of said property described above, and pursue statutory and other available remedies.

For an Order that, in addition to foreclosure, permits activity necessary to obtain possession of said collateral; therefore, all communications sent by Movant in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, may be sent directly to Debtors.

For such further relief as this Court deems appropriate.

Date: February 5, 2020

Respectfully submitted,

/s/ Christopher A. Young
Christopher A. Young #34207
CYLG, P.C.
1750 N. High Street
Denver, CO 80218
Phone 303-333-1252
Fax 303-399-3963
cyoung@cylgpc.com
B.604-028.NF

# COLORADO GOLD EQUITY CHOICE CREDIT AGREEMENT AND DISCLOSURE

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $84,000.00 | 12-12-2016 | 12-16-2046 | REDACTED | REDACTED | REDACTED | | |

References in the boxes above are for our use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** JILL S HANAUER
1143 HARRISON ST
DENVER, CO 80206

**Lender:** BANK OF THE WEST
CHERRY CREEK
2 STEELE STREET
DENVER, CO 80206-5726
(303) 331-3500

**CREDIT LIMIT: $84,000.00**         **DATE OF AGREEMENT:** December 12, 2016

**Introduction.** This COLORADO GOLD EQUITY CHOICE CREDIT AGREEMENT AND DISCLOSURE ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through BANK OF THE WEST. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean BANK OF THE WEST. You agree to the following terms and conditions:

**Promise to Pay.** You promise to pay BANK OF THE WEST, or order, the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are responsible under this Agreement or under the "Deed of Trust" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until December 16, 2046 ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your account opening. You may obtain credit advances during this period ("Draw Period"). After the Draw Period ends, the repayment period will begin and you will no longer be able to obtain credit advances. The length of the repayment period is as follows: from 12 to 240 months from the end of the draw period. You agree that we may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** Your "Regular Payment" will equal the amount of your accrued FINANCE CHARGES or $100.00, whichever is greater ("First Payment Stream"). You will make 120 of these payments. Your payments will be due monthly. Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges. An increase in the ANNUAL PERCENTAGE RATE may increase the amount of your Regular Payment. The Minimum Payment during the First Payment Stream may not reduce the principal that is outstanding on your Credit Line.

After completion of the First Payment Stream, your "Regular Payment" will be based on your outstanding balance as shown below or $100.00, whichever is greater ("Second Payment Stream"). Your payments will be due monthly.

| Range of Balances | Number of Payments | Amortization Period |
|---|---|---|
| $9,999.99 and Under | 120 | 120 payments |
| $10,000.00 - $49,999.99 | 180 | 180 payments |
| $50,000.00 and Above | 240 | 240 payments |

Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges.

A change in the ANNUAL PERCENTAGE RATE can cause the balance to be repaid more quickly or more slowly. When rates decrease, less interest is due, so more of the payment repays the principal balance. When rates increase, more interest is due, so less of the payment repays the principal balance. If this happens, we may adjust your payment as follows: your payment may be increased by the amount necessary to repay the balance by the end of this payment stream. Each time the ANNUAL PERCENTAGE RATE changes, we will review the effect the change has on your Credit Line Account to see if your payment is sufficient to pay the balance by the Maturity Date. If it is not, your payment will be increased by an amount necessary to repay the balance by the Maturity Date.

In any event, if your Credit Line balance falls below $100.00, you agree to pay your balance in full. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied to interest, unpaid principal, other charges then late charges.

**Receipt of Payments.** All payments must be made in U.S. dollars and must be received by us consistent with any payment instructions provided on or with your periodic billing statement. If a payment is made consistent with our payment instructions but received after 5:00 P.M. Mountain Time on a business day, we will apply your payment to your Credit Line on the next business day.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of Eighty-four Thousand & 00/100 Dollars ($84,000.00), which will be your "Credit Limit" under this Agreement. During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the Deed of Trust covering your principal dwelling.

**Charges to your Credit Line.** We may charge your Credit Line to other fees and costs that you are obligated to pay under this Agreement, the Deed of Trust or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Deed of Trust for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If

you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** Beginning on the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

**Credit Line Checks.** Writing a preprinted "Check" that we will supply to you.

**Telephone Request.** Requesting a credit advance from your Credit Line to be applied to your designated account by telephone. Except for transactions covered by the federal Electronic Fund Transfers Act and unless otherwise agreed in your deposit account agreement, you acknowledge and you agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine.

**Requests in Person.** Requesting a credit advance in person at any of our authorized locations.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Checks in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Check.

**Post-dated Checks.** Your Check is post-dated. If a post-dated Check is paid and as a result any other check is returned or not paid, we are not responsible.

**Stolen Checks.** Your Checks have been reported lost or stolen.

**Unauthorized Signatures.** Your Check is not signed by an "Authorized Signer" as defined below.

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Check.

**Transaction Violation.** Your Check is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement or would be if we paid the Check.

**Other Restriction.** Credit Line Checks may not be used to make payments on the Equity Choice Account.

If we pay any Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Check. The Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Checks along with your periodic billing statements; however, your use of each Check will be reflected on your periodic statement as a credit advance. We do not "certify" Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

**Credit Line Check, Telephone Request and In Person Request Limitations.** The following transaction limitations will apply to your Credit Line and the writing of Checks, requesting an advance by telephone and requesting an advance in person.

**Minimum Advance Amount.** The minimum amount of any credit advance that can be made on your Credit Line is $100.00. This means any Check must be written for at least the minimum advance amount.

**Other Transaction Requirements.** Credit Line Checks may not be used to make payments on the Equity Choice Account.

**Limitation on All Access Devices.** You may not use any access device, whether described above or added in the future, for any illegal or unlawful transaction, and we may decline to authorize any transaction that we believe poses an undue risk of illegality or unlawfulness. Notwithstanding the foregoing, we may collect on any debt arising out of any illegal or unlawful transaction.

**Authorized Signers.** The words "Authorized Signer" on Checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost Checks.** If you lose your Checks or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (303) 331-3500. You also can notify us at our address shown at the beginning of this Agreement.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein: a Deed of Trust dated December 12, 2016, to the Public Trustee for the benefit of us on real property located in DENVER County, State of Colorado.

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Deed of Trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement, unless prohibited by applicable law. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "average daily balance" method. To

get the average daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us a daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily balance."

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described herein. Then we multiply by the number of days in the billing cycle. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. We start with an independent index which is the PRIME RATE AS PUBLISHED IN THE WESTERN EDITION OF THE WALL STREET JOURNAL (the "Index"). We will use the most recent Index value available to us as of the last business day of each month to determine whether the next billing cycle is subject to any ANNUAL PERCENTAGE RATE adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Credit Line Account, we may designate a substitute Index after notice to you. To determine the Periodic Rate that will apply to your First Payment Stream, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE for your First Payment Stream. To determine the Periodic Rate that will apply to your Second Payment Stream, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE for your Second Payment Stream. The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Any increase in the Periodic Rate will take the form of higher payment amounts. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect monthly. In no event will the Periodic Rate result in a corresponding ANNUAL PERCENTAGE RATE that is less than 3.000% or more than 18.000%, nor will the Periodic Rate or corresponding ANNUAL PERCENTAGE RATE exceed the maximum rate allowed by applicable law. Today the Index is 3.500% per annum, and therefore the initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are as stated below:

### Current Rates for the First Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 1.240% | 4.740% | 0.01299% |

### Current Rates for the Second Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 3.000% | 6.500% | 0.01781% |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period.

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below:

**Annual Fee.** A nonrefundable Annual Fee of $75.00 will be charged to your Credit Line at the following time: During your 13th billing cycle and every 12th billing cycle thereafter during the Draw Period. There is no annual fee for the first year.

**Returned Items.** You may be charged $15.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Fee to Stop Payment.** Your Credit Line Account may be charged $8.00 when you request a stop payment on your account.

**Late Charge.** Your payment will be late if it is not received by us within 10 days after the "Payment Due Date" shown on your periodic statement. If your payment is late we may charge you 5.000% of the unpaid amount of the payment.

**Other Charges.** Your Credit Line Account may be charged the following other charges: Demand Statement Fee. The amount of this other charge is: $0.00.

**Lender's Rights.** Under this Agreement, we have the following rights:

**Termination and Acceleration.** We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen: (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or

proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker.

(4) We are precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new Index and margin. The new Index will have an historical movement substantially similar to the original Index, and the new Index and margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the original Index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum ANNUAL PERCENTAGE RATE under your Credit Line Account is reached.

**Collection Costs.** We may hire or pay someone else who is not our salaried employee to help collect this Agreement if you do not pay. You will pay us that amount. This includes our reasonable attorneys' fees and legal expenses, however not to exceed fifteen percent (15%) of the unpaid debt after default, whether or not there is a lawsuit, including without limitation reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, you also will pay any court costs, in addition to all other sums provided by law.

**Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all Checks and any other access devices. Any use of Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us in writing at the address shown on your periodic billing statement or other designated address and return all Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: BANK OF THE WEST, CHERRY CREEK, 2 STEELE STREET, DENVER, CO 80206-5728.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Annual Review.** You agree that you will provide us with a current financial statement, a new credit application, or both, annually, on forms provided by us. Based upon this information we will conduct an annual review of your Credit Line Account. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense. You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Deed of Trust. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: BANK OF THE WEST C/O CPS Research P.O. Box 2078 Omaha , NE 68103.

**AUTOMATIC PAYMENT DEDUCTION.** If you have authorized the Bank to automatically debit your minimum payment from your Bank of the West deposit account, the margin stated above as the Margin Added to Index has been reduced by 0.25% from the margin that would otherwise have been stated. If you have not authorized such deduction in the connection with this agreement, but later Authorize such deductions, the Bank will reduce your margin by the same amount. In either case, if after having authorized the deduction, you later revoke such authorization, close your deposit account, or fail to maintain a sufficient balance in your account to make your minimum payments, or if the Bank closes your deposit account of any reason, the margin used to calculate your Daily Periodic Rate will increase by 0.25% . This increase will generally result in an increase in the amount of your minimum payment.

**LENDER'S RIGHTS ADDITIONAL PROVISION.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect: "As a result of government action, the value of our security interest no longer equals or exceeds your Credit Limit".

**FIXED RATE LOAN OPTION REQUEST.** This Agreement contains an option to convert the interest rate from a variable rate with interest limits to fixed rate as calculated below. How the Fixed Rate Loan Option Works. Prior to the end of the Draw Period of your Account, you may use the Fixed Rate Loan Option feature to establish up to three (3) Fixed Rate Loan Option within your Account. A Fixed Rate Loan Option will have a fixed rate of interest and repayment term, and may be for any amount from $5,000.00 up to the Available Credit on the Account. If the amount

is $5,000.00 to $9,999.99 you may choose a repayment term from 12 to 120 months. If the loan amount is $10,000.00 to $19,999.99 you may choose a repayment term from 12 to 180 months. If the loan amount is $20,000.00 or more, you may choose a repayment term from 12 to 240 months. The maximum repayment term may be affected by a required minimum regular payment of $100.00. The amount of the payment will be the amount of principal and interest sufficient to amortize the Fixed Rate Loan Option over the repayment term selected by you at the time the Fixed Rate Loan Option is exercised. You will be told the minimum payment and due date when you exercise the Option. THIS MINIMUM PAYMENT WILL BE IN ADDITION TO THE MONTHLY PAYMENT DUE ON THE VARIABLE RATE LOAN PORTION. You may exercise a Fixed Rate Loan Option in person at any of our Banking Offices or by phone. However should you request a Fixed Rate Loan Option by phone, you agree to sign and return any written confirmation documents that we send you.

CONDITIONS FOR EXERCISING FIXED RATE LOAN OPTION. (a) No default exists under the Account; and (b) you cannot establish more than three (3) Fixed RateLoan Option Loans during any 12 month period, nor can you have more than three (3) Fixed Rate Loan Option Loans open at the same time. You may not use a Fixed Rate Loan Option to pay off an existing Fixed Rate Loan Option.

EFFECT OF FIXED RATE LOAN OPTION ON CREDIT LIMIT. The Credit Limit specified above is the overall credit limit on the Account. If you exercise a Fixed Rate Loan Option, your Account will consist of a Variable Rate Portion and one or more Fixed Rate Portions. The available credit on the Account is reduced by the amount of any Fixed Rate Loan Option (s). Any principal reduction paid on the Fixed Rate Loan Option or Variable Rate Line of Credit Portion will increase the available credit by an equal amount during the Draw Period.

FIXED RATE LOAN OPTION FEE -FINANCE CHARGE. For each Fixed Rate Loan Option exercised, you will be charged a fee of $100.00. The fee will be charged to your Account.

PERIODIC FINANCES CHARGES ON FIXED RATE LOAN OPTION. The ANNUAL PERCENTAGE RATE and Daily Periodic Rate for a Fixed Rate Loan Option will be determined at the time the Fixed Rate Loan Option is exercised depending upon the amount and repayment term. The Annual Percentage Rate for a Fixed Rate Loan Option may be higher than a Variable Rate Portion. We will add a margin to the then current Fixed Rate Loan Index. The Fixed Rate Loan Index is the previous month's Prime Rate as published in the Wall Street Journal Western Edition on the last business day of each month. This is the same index used for the Variable Rate Line Portion of the Account. The current Fixed Rate Index is 3.50%. The margin used to calculate the Annual Percentage Rate for Fixed Rate Loan Option will be: 6.50% (Current Rate 10.00%). However, we may but are not under any obligation or requirement to make lower Fixed Rate Loan Option rates available from time to time. Please contact the Convenience Banking Team at 1-877-699-7943 for the Fixed Rate Loan Option rate currently offered. If you have chosen to have the payment on your Equity Choice Line automatically deducted from your deposit account with us, the margin stated above will be reduced by 0.25%. If after having authorized the deduction, you later revoke such authorization, close your deposit account, or fail to maintain a sufficient balance in your account to make your minimum payments, or if the Bank closes your deposit account for any reason, the margin stated above will be increased by 0.25%. This increase will generally result in an increase in the amount of your final payment. The ANNUAL PERCENTAGE RATE and Daily Periodic Rate will be disclosed to you on your monthly periodic billing statement.

PAYMENT ON FIXED RATE LOAN OPTION. You may make monthly payments on any Fixed Rate Loan Option by using an automatic payment deduction from your deposit account with us, or by using the periodic billing statement coupon.

REPAYMENT PERIOD/DETERMINING THE SECOND PAYMENT STREAM. Notwithstanding any terms in this Agreement to the contrary, the following provisions apply to establish the Second Payment Stream to be effective during the Repayment Period:.

HOW THE REPAYMENT PERIOD WORKS . After the Draw Period, the Repayment Period will begin. You will no longer be able to obtain credit advances. Your Regular Payments will be based on the amortization of any balance due on the variable rate portion of your Account at the expiration of the Draw Period. The amortization will be based on a fixed rate of interest and repayment term. The length of the repayment period is disclosed on the front page of this Agreement. The minimum payment will be $100.00. THIS MINIMUM PAYMENT WILL BE IN ADDITION TO THE REGULAR PAYMENT DUE ON ANY FIXED RATE LOAN OPTION IN PLACE AT THAT TIME.

PERIODIC FINANCE CHARGES. During the Repayment Period, the Annual Percentage Rate and Daily Periodic Rate will be fixed at a level that will be based, in part, on the value of an index on the last business day of the calendar month before the Repayment Period begins. The index is the previous month's Prime Rate as published in the Wall Street Journal western edition on the last business day of each month. To determine the Annual Percentage Rate that will apply to your account during the repayment period, we will add a margin to the then current value of the Index. The current Fixed Rate Index is 3.50%. The margin used to calculate the Annual Percentage Rate during the Repayment Period will be: 3.00% (Current Rate 6.50%). If you have chosen to have the payment on your Equity Choice Line automatically deducted from your deposit account with us, the margin stated above will be reduced by 0.25%. If after having authorized the deduction, you later revoke such authorization, close your deposit account or fail to maintain a sufficient balance in your account to make your minimum payments, or if the Bank closes your deposit account for any reason, the margin stated above will increase by 0.25%. This increase will generally result in an increase in the amount of your final payment. The ANNUAL PERCENTAGE RATE and Daily Rate will be disclosed to you on your monthly periodic billing statement.

ESTABLISHING PROPERTY VALUE WHEN THE DRAW PERIOD ENDS. The size of the margin added to the Fixed Rate Index to determine the Annual Percentage Rate during the Repayment Period is base; in part, on the value of your property as established when the account is first opened. If you wish us to obtain a new appraisal immediately prior to the beginning of the Repayment Period, to determine whether a lower margin can be used to set the Repayment Period Annual Percentage Rate, you will have the option to do so. You will have to pay the costs for the appraisal in effect at that time.

SUBORDINATION FEE. Subordination Fee not permitted.

DELAY IN FUNDS AVAILABILITY. While all conforming payments made to your Credit Line Account will be applied promptly and in accordance with the terms set forth above, during the Draw Period we may delay your ability to draw credit advances against uncollected funds if we consider it necessary to verify the source and or availability of the payment received.

Governing Law. This Agreement will be governed by federal law applicable to us and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. This Agreement has been accepted by us in the State of Colorado.

Caption Headings. Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

Interpretation. You agree that this Agreement, together with the Deed of Trust, is the most reliable evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Deed of Trust or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the most reliable evidence of your obligation to pay.

Severability. If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "What you should know about Home Equity Lines of Credit," given with the application.

BORROWER:

X _____
   JILL S HAMMER

## BILLING ERROR RIGHTS

### YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

    Your name and account number.

    The dollar amount of the suspected error.

    Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

LaserPro, Ver. 16.3.10.018  Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved  - CO  F:\CGTL.FC\FILPL\G23.FC  TR-6716410  PR-124

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|--|-------------|---------|---------|----------|
| $84,000.00 | 12-12-2016 | 12-16-2046 | REDACTED | REDACTED | REDACTED | | CR |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** JILL S HANAUER
1143 HARRISON ST
DENVER, CO 80206

**Lender:** BANK OF THE WEST
CHERRY CREEK
2 STEELE STREET
DENVER, CO 80206-5728
(303) 331-3500

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Variable Rate Disclosable Open-end Line of Credit Loan to an Individual with a Credit Limit of $84,000.00.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

- COLORADO GOLD EQUITY CHOICE CREDIT AGREEMENT AND DISCLOSURE
- Agreement to Provide Insurance
- Notice of Final Agreement
- Optional Loan/Line Dates

- CO Deed of Trust for Real Property located at 1143 HARRISON ST, DENVER, CO 80206
- Disbursement Request and Authorization
- Notice of Right to Cancel: JILL S HANAUER
- Model Privacy Notice: JILL S HANAUER

**Parties.** The term "Parties" means BANK OF THE WEST and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower: JILL S HANAUER
Grantor(s): JILL S HANAUER

Each Party who signs below, other than BANK OF THE WEST, acknowledges, represents, and warrants to BANK OF THE WEST that it has received, read and understood this Notice of Final Agreement. This Notice is dated December 12, 2016.

**BORROWER:**

X _____
JILL S HANAUER

**LENDER:**

**BANK OF THE WEST**

X _____
Authorized Signer

LaserPro, Ver. 16.3.10.014  Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved.  - CO  E:\CFI\LPC\F11.FC\TR-47\16446  PR-191

# NOTICE OF RIGHT TO CANCEL

| Principal | Loan Date | Maturity | REDACTED | Coll/Coll | REDACTED | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $84,000.00 | 12-12-2016 | 12-16-2046 | REDACTED | REDACTED | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Grantor:** JILL S HANAUER
1143 HARRISON ST
DENVER, CO 80206

**Lender:** BANK OF THE WEST
CHERRY CREEK
2 STEELE STREET
DENVER, CO 80206-5728
(303) 331-3500

## Your Right To Cancel

Lender has agreed to establish an open-end credit account for you, and you have agreed to give Lender a deed of trust on your home as security for the account. You have a legal right under federal law to cancel the account without cost, within three (3) business days from whichever of the following events occurs last:

(A)  the date of the opening of your account which is December 12, 2016; or

(B)  the date you received your Truth in Lending disclosures; or

(C)  the date you received this notice of your right to cancel the account.

If you cancel your account, the deed of trust on your home is also cancelled. Within twenty (20) calendar days after Lender receives your notice, Lender must take the steps necessary to reflect the fact that the deed of trust on your home has been cancelled, and Lender must return to you any money or property you have given to Lender or to anyone else in connection with this account.

You may keep any money or property Lender has given you until Lender has done the things mentioned above, but you must then offer to return the money or property Lender has given you. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to Lender's address shown below. If Lender does not take possession of the money or property within twenty (20) calendar days of your offer, you may keep it without further obligation.

## How to Cancel

If you decide to cancel the account, you may do so by notifying Lender in writing at BANK OF THE WEST, CHERRY CREEK, 2 STEELE STREET, DENVER, CO 80206-5728. You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one (1) copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of December 15, 2016 or midnight of the third (3rd) business day following the latest of the three (3) events listed above. If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL.

X _____
Date                    JILL S HANAUER

### Acknowledgment of Receipt

I ACKNOWLEDGE THAT I RECEIVED TWO (2) COPIES OF THIS NOTICE OF RIGHT TO CANCEL AND ONE (1) COPY OF THE TRUTH IN LENDING DISCLOSURES.

12/12/16
Date

X _____
JILL S HANAUER

INSTRUCTIONS TO LENDER. This form is for use in credit transactions involving loans of any amount to individuals for personal, family, or household purposes and SECURED BY AN INTEREST IN THE CONSUMER'S CURRENT PRINCIPAL RESIDENCE, except PURCHASE MONEY LIENS. Two (2) copies of a separate Notice of Right to Cancel form, together with a copy of the Truth in Lending disclosure, must be given to each person who has an ownership interest in the residence, even if the person does not sign the note.

LaserPro, Ver. 16.3.10.016 Copr. D+H USA Corporation 1997, 2016. All Rights Reserved. - CO L:\DILS\PsCFI\LPL\D0.FC TR-9716419 PR-134

# LINE OF CREDIT ADVANCE REQUEST

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $84,000.00 | 12-12-2016 | 12-18-2046 | REDACTED | REDACTED | REDACTED | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** JILL S HANAUER
1143 HARRISON ST
DENVER, CO 80206

**Lender:** BANK OF THE WEST
CHERRY CREEK
2 STEELE STREET
DENVER, CO 80206-5728
(303) 331-3500

This LINE OF CREDIT ADVANCE REQUEST is attached to and by this reference is made a part of the Disbursement Request and Authorization, dated December 12, 2016, and executed in connection with a loan or other financial accommodations between BANK OF THE WEST and JILL S HANAUER.

AMOUNT OF ADVANCE $_____0_____

I authorize Bank of the West to advance from my line of credit the amount indicated above.

Please disburse as follows:

_____Credit my BOW account #_____

_____Send a check to Branch #_____. I will pick up the check.

_____Overnight the Check to me at the following address:

_____
(Company Name if not being sent to home address)

_____
Street address (no P.O. Box)

_____
City, State, Zip Code.

THIS LINE OF CREDIT ADVANCE REQUEST IS EXECUTED ON DECEMBER 12, 2016.

BORROWER:

X_____
JILL S HANAUER

LaserPro, Ver. 16.2.10.016 Copr. D+H USA Corporation 1997, 2016. All Rights Reserved. - CO E:\CFI\LPC\FILPL\G03.FC TR-5715418 PR-128



12/20/2016 09:18 AM          R $46.00          D $0.00
City & County of Denver
Electronically Recorded                            OOT

**RECORDATION REQUESTED BY:**
BANK OF THE WEST
*CHERRY CREEK*
2 STEELE STREET
DENVER, CO 80206-5728

**WHEN RECORDED MAIL TO:**
BANK OF THE WEST
CONSUMER PRODUCT SERVICING
P.O. BOX 2497
OMAHA, NE 68103-2497

**RETURN TO:**
DRI Title & Escrow
13057 W. Center Rd., Ste #1
Omaha, NE 68144

REDACTED                              REDACTED                    **FOR RECORDER'S USE ONLY**

## DEED OF TRUST

MAXIMUM PRINCIPAL AMOUNT SECURED. The Lien of this Deed of Trust shall not exceed at any one time $84,000.00 except as allowed under applicable Colorado law.

THIS DEED OF TRUST is dated December 12, 2016, among JILL S HANAUER, A TENANT IN SEVERALTY, UNMARRIED PERSON, whose address is 1143 HARRISON ST, DENVER, CO 80206 ("Grantor"); BANK OF THE WEST, whose address is CHERRY CREEK, 2 STEELE STREET, DENVER, CO 80206-5728 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and the Public Trustee of the City and County of Denver, Colorado (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Grantor hereby irrevocably grants, transfers and assigns to Trustee for the benefit of Lender as Beneficiary all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in DENVER County, State of Colorado:

ALL THE REAL PROPERTY TOGETHER WITH IMPROVEMENTS, IF ANY, SITUATE, LYING AND BEING IN THE COUNTY OF DENVER, STATE OF COLORADO DESCRIBED AS FOLLOWS:

LOT 29, EXCEPT THE NORTH 7.5 FEET THEREOF AND THE NORTH 1/2 OF LOT 28, EXCEPT THE REAR 6 FEET OF SAID LOTS, BLOCK 238, CAPITOL AVENUE SUBDIVISION, CITY AND COUNTY OF DENVER, STATE OF COLORADO.

The Real Property or its address is commonly known as 1143 HARRISON ST, DENVER, CO 80206.

REVOLVING LINE OF CREDIT. This Deed of Trust secures the indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Grantor so long as Grantor complies with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Deed of Trust secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in the Credit Agreement and any intermediate balance.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents.

EXHIBIT B

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient

corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the maximum amount of Grantor's credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the indebtedness. If Lender holds any proceeds after payment in full of the indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Deed of Trust also will secure payment of these amounts. This rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to

Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such Indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this

security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** Upon the full performance of all the obligations under this Deed of Trust, Trustee may, upon production of documents and fees as required under applicable law, release this Deed of Trust, and such release shall constitute a release of the lien for all such additional sums and expenditures made pursuant to this Deed of Trust. Lender agrees to cooperate with Grantor in obtaining such release and releasing the other collateral securing the Indebtedness. Any release fees required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Grantor will be in default under this Deed of Trust if any of the following happen: (A) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition. (B) Grantor does not meet the repayment terms of the Credit Agreement. (C) Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** Subject to any applicable notice and cure provisions under Colorado law, if an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Deed of Trust, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option to declare the entire Indebtedness immediately due and payable.

**Foreclosure.** Lender shall have the right to cause all or any part of the Real Property, and Personal Property, if Lender decides to proceed against it as if it were real property, to be sold by the Trustee according to the laws of the State of Colorado as respects foreclosures against real property. The Trustee shall give notice in accordance with the laws of Colorado. The Trustee shall apply the proceeds of the sale in the following order: (a) to all costs and expenses of the sale, including but not limited to Trustee's fees, attorneys' fees, and the cost of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled to the excess.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this

subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver. Receiver may be appointed by a court of competent jurisdiction upon ex parte application and without notice, notice being expressly waived.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Credit Agreement or available at law or in equity.

**Sale of the Property.** In exercising its rights and remedies, Lender shall be free to designate on or before it files a notice of election and demand with the Trustee, that the Trustee sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property. Upon any sale of the Property, whether made under a power of sale granted in this Deed of Trust or pursuant to judicial proceedings, if the holder of the Credit Agreement is a purchaser at such sale, it shall be entitled to use and apply all, or any portion of, the Indebtedness for or in settlement or payment of all, or any portion of, the purchase price of the Property purchased, and, in such case, this Deed of Trust, the Credit Agreement, and any documents evidencing expenditures secured by this Deed of Trust shall be presented to the person conducting the sale in order that the amount of Indebtedness so used or applied may be credited thereon as having been paid.

**Attorneys' Fees; Expenses.** If Lender forecloses or institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees not in excess of fifteen percent (15%) of the unpaid debt after default and referral to an attorney not Lender's salaried employee whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** To the extent permitted by applicable law, Trustee shall have all of the rights and duties of Lender as set forth in this section.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Colorado.

No Waiver by Lender. Grantor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Deed of Trust. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor. In the event Lender institutes legal process to obtain possession of the Property and to the extent permitted by law, Grantor hereby knowingly and voluntarily waives any right to a hearing prior to a court order granting Lender the right to take possession of the Property. Grantor waives all rights of exemption from execution or similar law in the Property, and Grantor agrees that the rights of Lender in the Property under this Deed of Trust are prior to Grantor's rights while this Deed of Trust remains in effect.

Severability. If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

Successors and Assigns. Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

Time is of the Essence. Time is of the essence in the performance of this Deed of Trust.

Waiver of Homestead Exemption. Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Colorado as to all Indebtedness secured by this Deed of Trust.

DEFINITIONS. The following words shall have the following meanings when used in this Deed of Trust:

Beneficiary. The word "Beneficiary" means BANK OF THE WEST, and its successors and assigns.

Borrower. The word "Borrower" means JILL S HANAUER and includes all co-signers and co-makers signing the Credit Agreement and all their successors and assigns.

Credit Agreement. The words "Credit Agreement" mean the credit agreement dated December 12, 2016, with credit limit of $84,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Credit Agreement is December 16, 2046. NOTICE TO GRANTOR: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.

Deed of Trust. The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

Environmental Laws. The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

Existing Indebtedness. The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

Grantor. The word "Grantor" means JILL S HANAUER.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Improvements. The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

Indebtedness. The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means BANK OF THE WEST, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means the Public Trustee of the City and County of Denver, Colorado.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

X _____
JILL S HANAUER

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Colorado_ )
) SS
COUNTY OF _Denver_ )

CLINTON WILL CARTER
Notary Public
State of Colorado
Notary ID 20154092152
My Commission Expires Aug 14, 2019

On this day before me, the undersigned Notary Public, personally appeared JILL S HANAUER, to me known to be the individual described in and who executed the Deed of Trust, and acknowledged that he or she signed the Deed of Trust as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _____ day of _December_, 20_16_.

By _____   Residing at _2 Steele St. Denver CO 80206_

Notary Public in and for the State of _Colorado_   My commission expires _August 14th, 2019_

---

LaserPro, Ver. 16.2.10.016 Copr. D+H USA Corporation 1997, 2016. All Rights Reserved. - CO E:\DISTLP\CFI\LPL\G01.FC TR-8716418 PR-124

OPT: A=ACCRUED SINCE LAST TRAN, C=CAPTURE, R=REVERSAL, S=SPECIFIC, H=SPLIT HIST

| OPT | EFF DATE | TRAN | DESCRIPTION | TRAN AMOUNT | POST BALANCE |
|-----|----------|------|-------------|-------------|--------------|
|  | 12/16/16 | 7301 | CR LINE FUNDING | 84,000.00 | .00 |
|  | 12/27/16 | 8999 | DDA 035367052 | 10,000.00 | 10,000.00 |
|  | 01/20/17 | 7080 | IMTR 035-367045 | 100.00 | 9,903.88 |
|  | 01/30/17 | 8005 | BALANCE ADVANCE | 1,900.00 | 11,803.88 |
|  | 02/03/17 | 8999 | DDA 035367052 | 3,000.00 | 14,803.88 |
|  | 02/09/17 | 8999 | DDA 035367052 | 500.00 | 15,303.88 |
|  | 02/17/17 | 8005 | BALANCE ADVANCE | 280.00 | 15,583.88 |
|  | 02/20/17 | 7080 | IMTR 035-367045 | 100.00 | 15,524.01 |
|  | 03/07/17 | 8999 | DDA 035367052 | 1,500.00 | 17,024.01 |
|  | 03/13/17 | 8999 | DDA 035367052 | 1,000.00 | 18,024.01 |
|  | 03/20/17 | 7080 | IMTR 035-367045 | 100.00 | 17,980.59 |
|  | 03/27/17 | 8999 | DDA 035367052 | 3,000.00 | 20,980.59 |
|  | 03/28/17 | 8999 | DDA 035367052 | 3,000.00 | 23,980.59 |
|  | 04/10/17 | 8005 | BALANCE ADVANCE | 5,000.00 | 28,980.59 |

PF2-NEXT PAGE  PF3-PREV PAGE  PF6-SELECT

# EXHIBIT C

CTL2 000 CTL3 000 CTL4 0000 ACCT 0000C          HANAUER JILL
START DATE 04/14/17          COST CENTER   29502

OPT: A=ACCRUED SINCE LAST TRAN, C=CAPTURE, R=REVERSAL, S=SPECIFIC, H=SPLIT HIST

| OPT | EFF DATE | TRAN | DESCRIPTION | TRAN AMOUNT | POST BALANCE |
|-----|----------|------|-------------|-------------|--------------|
| | 04/14/17 | 8999 | DDA 035367052 | 5,000.00 | 33,980.59 |
| | 04/20/17 | 7080 | IMTR 035-367045 | 100.00 | 33,955.41 |
| | 05/02/17 | 8999 | DDA 035367052 | 5,000.00 | 38,955.41 |
| | 05/05/17 | 8999 | DDA 035367052 | 5,000.00 | 43,955.41 |
| | 05/09/17 | 8005 | BALANCE ADVANCE | 10,000.00 | 53,955.41 |
| | 05/12/17 | 8005 | BALANCE ADVANCE | 7,600.00 | 61,555.41 |
| | 05/15/17 | 7303 | INCR HOLD AMT | 7,600.00 | 61,555.41 |
| | 05/16/17 | 8323 | DECR HOLD AMT | 7,600.00 | 61,555.41 |
| | 05/19/17 | 8999 | DDA 035367052 | 2,000.00 | 63,555.41 |
| | 05/20/17 | 7080 | IMTR 035-367045 | 121.57 | 63,555.41 |
| | 05/22/17 | 8999 | DDA 035367052 | 4,000.00 | 67,555.41 |
| | 06/19/17 | 8301 | DDA 035367052 | 246.70 | 67,555.41 |
| | 06/19/17 | 8999 | DDA 035367052 | 5,000.00 | 72,555.41 |
| | 07/20/17 | 7080 | IMTR 035-367045 | 298.13 | 72,555.41 |

PF2-NEXT PAGE   PF3-PREV PAGE   PF6-SELECT

CTL2 000 CTL3 000 CTL4 0000 ACCT 00000:        HANAUER JILL
START DATE 07/31/17        COST CENTER   29502

OPT: A=ACCRUED SINCE LAST TRAN, C=CAPTURE, R=REVERSAL, S=SPECIFIC, H=SPLIT HIST

| OPT | EFF DATE | TRAN | DESCRIPTION | TRAN AMOUNT | POST BALANCE |
|-----|----------|------|-------------|-------------|--------------|
| | 07/31/17 | 8301 | DDA 035367052 | 322.90 | 72,555.41 |
| | 09/20/17 | 7080 | IMTR 035-367045 | 338.30 | 72,555.41 |
| | 09/25/17 | 8999 | DDA 047201561 | 100.00 | 72,655.41 |
| | 10/16/17 | 8301 | DDA 035367052 | 500.00 | 72,482.87 |
| | 11/01/17 | 8999 | DDA 035367052 | 1,000.00 | 73,482.87 |
| | 11/02/17 | 8999 | DDA 035367052 | 1,000.00 | 74,482.87 |
| | 11/06/17 | 8999 | DDA 035367052 | 500.00 | 74,982.87 |
| | 11/20/17 | 7080 | IMTR 035-367045 | 338.41 | 74,982.87 |
| | 11/22/17 | 8301 | DDA 035367052 | 800.00 | 74,182.87 |
| | 12/20/17 | 7080 | IMTR 035-367045 | 336.22 | 74,182.87 |
| | 01/02/18 | 8999 | DDA 035367052 | 1,000.00 | 75,182.87 |
| | 01/18/18 | 8999 | DDA 035367052 | 1,000.00 | 76,182.87 |
| | 01/20/18 | 7080 | IMTR 035-367045 | 345.90 | 76,182.87 |
| | 02/01/18 | 8999 | DDA 035367052 | 1,000.00 | 77,182.87 |

PF2-NEXT PAGE   PF3-PREV PAGE   PF6-SELECT

OPT: A=ACCRUED SINCE LAST TRAN, C=CAPTURE, R=REVERSAL, S=SPECIFIC, H=SPLIT HIST

| OPT | EFF DATE | TRAN | DESCRIPTION | TRAN AMOUNT | POST BALANCE |
|---|---|---|---|---|---|
| | 02/20/18 | 7080 | IMTR 035-367045 | 367.94 | 77,182.87 |
| | 03/20/18 | 7080 | IMTR 035-367045 | 339.54 | 77,182.87 |
| | 04/20/18 | 7080 | IMTR 035-367045 | 376.27 | 77,182.87 |
| | 05/20/18 | 7080 | IMTR 035-367045 | 364.14 | 77,182.87 |
| | 06/20/18 | 7080 | IMTR 035-367045 | 392.66 | 77,182.87 |
| | 07/20/18 | 7080 | IMTR 035-367045 | 379.99 | 77,182.87 |
| | 08/20/18 | 7080 | IMTR 035-367045 | 392.66 | 77,182.87 |
| | 09/05/18 | 8999 | DDA 035367052 | 2,000.00 | 79,182.87 |
| | 09/11/18 | 8999 | MMA 035367045 | 800.00 | 79,982.87 |
| | 09/12/18 | 8999 | DDA 035367052 | 500.00 | 80,482.87 |
| | 09/13/18 | 8999 | DDA 035367052 | 1,500.00 | 81,982.87 |
| | 09/17/18 | 7303 | INCR HOLD AMT | 600.00 | 81,982.87 |
| | 09/17/18 | 7323 | DECR HOLD AMT | 600.00 | 81,982.87 |
| | 09/17/18 | 8999 | DDA 035367052 | 1,000.00 | 82,982.87 |

PF2-NEXT PAGE   PF3-PREV PAGE   PF6-SELECT

OPT: A=ACCRUED SINCE LAST TRAN, C=CAPTURE, R=REVERSAL, S=SPECIFIC, H=SPLIT HIST

| OPT | EFF DATE | TRAN | DESCRIPTION | TRAN AMOUNT | POST BALANCE |
|-----|----------|------|-------------|-------------|--------------|
| | 09/17/18 | 8005 | BALANCE ADVANCE | 600.00 | 83,582.87 |
| | 09/20/18 | 8999 | DDA 035367052 | 200.00 | 83,782.87 |
| | 10/01/18 | 7011 | FEE ASSESSMENT | 20.45 | 83,782.87 |
| | 10/25/18 | 8301 | DDA 035367052 | 400.00 | 83,782.87 |
| | 10/25/18 | 8301 | DDA 035367052 | 1,000.00 | 83,218.98 |
| | 10/25/18 | 7888 | PAYMENT AUTO CR | 409.05 | 82,818.98 |
| | 10/30/18 | 8999 | DDA 035367052 | 1,000.00 | 83,818.98 |
| | 11/01/18 | 7888 | PAYMENT AUTO CR | 415.66 | 83,818.98 |
| | 11/16/18 | 8999 | DDA 035367052 | 100.00 | 83,918.98 |
| | 11/19/18 | 8999 | DDA 035367052 | 20.00 | 83,938.98 |
| | 12/10/18 | 8999 | DDA 035367052 | 25.00 | 83,963.98 |
| | 12/18/18 | 8301 | DDA 035367052 | 1,500.00 | 83,001.96 |
| | 12/20/18 | 8999 | DDA 035367052 | 400.00 | 83,401.96 |
| | 12/21/18 | 8999 | SAV 042632356 | 300.00 | 83,701.96 |

PF2-NEXT PAGE   PF3-PREV PAGE   PF6-SELECT

```
AMHS          01/16/20        HISTORY SUMMARY        11:26:36
CUR                            *S/H MEMO*ACCT MSG*
CTL2 000 CTL3 000 CTL4 0000 ACCT 00000:        HANAUER JILL
START DATE 09/17/18           COST CENTER   29502

OPT: A=ACCRUED SINCE LAST TRAN, C=CAPTURE, R=REVERSAL, S=SPECIFIC, H=SPLIT HIST

OPT   EFF DATE TRAN DESCRIPTION            TRAN AMOUNT        POST BALANCE
      09/17/18 8005 BALANCE ADVANCE           600.00         83,582.87
      09/20/18 8999 DDA 035367052             200.00         83,782.87
      10/01/18 7011 FEE ASSESSMENT             20.45         83,782.87
      10/25/18 8301 DDA 035367052             400.00         83,782.87
      10/25/18 8301 DDA 035367052           1,000.00         83,218.98
      10/25/18 7888 PAYMENT AUTO CR           409.05         82,818.98
      10/30/18 8999 DDA 035367052           1,000.00         83,818.98
      11/01/18 7888 PAYMENT AUTO CR           415.66         83,818.98
      11/16/18 8999 DDA 035367052             100.00         83,918.98
      11/19/18 8999 DDA 035367052              20.00         83,938.98
      12/10/18 8999 DDA 035367052              25.00         83,963.98
      12/18/18 8301 DDA 035367052           1,500.00         83,001.96
      12/20/18 8999 DDA 035367052             400.00         83,401.96
      12/21/18 8999 SAV 042632356            300.00         83,701.96
PF2-NEXT PAGE  PF3-PREV PAGE  PF6-SELECT
```

OPT: A=ACCRUED SINCE LAST TRAN, C=CAPTURE, R=REVERSAL, S=SPECIFIC, H=SPLIT HIST

| OPT | EFF DATE | TRAN | DESCRIPTION | TRAN AMOUNT | POST BALANCE |
|-----|----------|------|-------------|-------------|--------------|
| | 01/24/19 | 7303 | INCR HOLD AMT | 260.00 | 83,701.96 |
| | 01/24/19 | 7323 | DECR HOLD AMT | 260.00 | 83,701.96 |
| | 01/24/19 | 8005 | BALANCE ADVANCE | 260.00 | 83,961.96 |
| | 01/31/19 | 7011 | FEE ASSESSMENT | 23.10 | 83,961.96 |
| | 02/05/19 | 7303 | INCR HOLD AMT | 20.00 | 83,961.96 |
| | 02/05/19 | 7323 | DECR HOLD AMT | 20.00 | 83,961.96 |
| | 02/08/19 | 7888 | PAYMENT AUTO CR | 416.60 | 83,961.96 |
| | 03/04/19 | 7011 | FEE ASSESSMENT | 23.08 | 83,961.96 |
| | 04/01/19 | 7011 | FEE ASSESSMENT | 21.71 | 83,961.96 |
| | 04/05/19 | 8322 | DECR LINE AMT | 84,000.00 | 83,961.96 |
| | 05/01/19 | 7011 | FEE ASSESSMENT | 24.03 | 83,961.96 |
| | 05/21/19 | 7070 | MOVE TO NONACCR | 2,182.62 | 83,961.96 |
| | 05/21/19 | 7072 | INC NON RECVY | 2,182.62 | 83,961.96 |
| | 05/24/19 | 8302 | REINSTATE | 84,000.00 | 83,961.96 |

PF2-NEXT PAGE   PF3-PREV PAGE   PF6-SELECT

OPT: A=ACCRUED SINCE LAST TRAN, C=CAPTURE, R=REVERSAL, S=SPECIFIC, H=SPLIT HIST

| OPT | EFF DATE | TRAN | DESCRIPTION | TRAN AMOUNT | POST BALANCE |
|-----|----------|------|-------------|-------------|--------------|
|     | 05/31/19 | 7011 | FEE ASSESSMENT | 23.26 | 83,961.96 |
|     | 06/13/19 | 7011 | FEE ASSESSMENT | 115.00 | 83,961.96 |
|     | 06/24/19 | 7011 | FEE ASSESSMENT | 82.00 | 83,961.96 |
|     | 07/01/19 | 7011 | FEE ASSESSMENT | 24.03 | 83,961.96 |
|     | 07/03/19 | 8322 | DECR LINE AMT | 84,000.00 | 83,961.96 |
|     | 07/12/19 | 7888 | PAYMENT AUTO CR | 461.65 | |
|     | 07/12/19 | 9888 | PMT AUTO CR REV | 461.65 | |
|     | 07/12/19 | 7011 | FEE ASSESSMENT | 15.00 | 83,961.96 |
|     | 07/31/19 | 7011 | FEE ASSESSMENT | 23.26 | 83,961.96 |
|     | 08/26/19 | 7011 | FEE ASSESSMENT | 1,080.50 | 83,961.96 |
|     | 09/03/19 | 7011 | FEE ASSESSMENT | 24.03 | 83,961.96 |
|     | 10/01/19 | 7011 | FEE ASSESSMENT | 24.03 | 83,961.96 |
|     | 10/22/19 | 7011 | FEE ASSESSMENT | 115.00 | 83,961.96 |
|     | 10/31/19 | 7011 | FEE ASSESSMENT | 23.26 | 83,961.96 |

PF2-NEXT PAGE   PF3-PREV PAGE   PF6-SELECT

OPT: A=ACCRUED SINCE LAST TRAN, C=CAPTURE, R=REVERSAL, S=SPECIFIC, H=SPLIT HIST

| OPT | EFF DATE | TRAN | DESCRIPTION | TRAN AMOUNT | POST BALANCE |
|-----|----------|------|-------------|-------------|--------------|
|     | 12/02/19 | 7011 | FEE ASSESSMENT | 23.14 | 83,961.96 |
|     | 12/17/19 | 7011 | FEE ASSESSMENT | 949.45 | 83,961.96 |
|     | 12/31/19 | 7011 | FEE ASSESSMENT | 21.53 | 83,961.96 |

| Fill in this information to identify your case and this filing: | | | |
|---|---|---|---|
| Debtor 1 | **Jill S Hanauer** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO | | |
| Case number | _____ | | |

☐ Check if this is an amended filing

## Official Form 106A/B
## Schedule A/B: Property                                          12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**  Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes.  Where is the property?

**1.1**

**1143 Harrison Street**
Street address, if available, or other description

**Denver**          **CO**      **80206-0000**
City                    State      ZIP Code

**Denver**
County

**What is the property?** Check all that apply

■ Single-family home
■ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Residence: home**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $690,000.00 | $690,000.00 |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☐ Check if this is community property (see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here....................................................=>**

| $690,000.00 |
|---|

**Part 2:**  Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases*.

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

■ No
☐ Yes

EXHIBIT D

Debtor 1    __Jill S Hanauer__                                    Case number *(if known)* _____

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

   ■ No
   ☐ Yes

5  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for
   pages you have attached for Part 2. Write that number here...........................................................=>

   | $0.00 |
   |---|

| Part 3: | Describe Your Personal and Household Items |
|---|---|

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ■ Yes. Describe.....

   | Household goods and furniture. | $2,000.00 |
   |---|---|

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ■ Yes. Describe.....

   | Electronics: - 2 TVS, Cell phone; computer | $1,000.00 |
   |---|---|

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ■ No
   ☐ Yes. Describe.....

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ■ No
   ☐ Yes. Describe.....

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ■ No
    ☐ Yes. Describe.....

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ■ Yes. Describe.....

    | Women's clothing. | $1,000.00 |
    |---|---|

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☐ No
    ■ Yes. Describe.....

    | Jewelry: Miscellanous costume jewelry | $400.00 |
    |---|---|

Debtor 1     Jill S Hanauer _____     Case number *(if known)* _____

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    �■ No
    ☐ Yes.  Describe.....

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ■ No
    ☐ Yes.  Give specific information.....

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ...................................................................................

| | $4,400.00 |
|---|---|

| Part 4: | Describe Your Financial Assets |
|---|---|

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

16. **Cash**
    *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
    ☐ No
    ■ Yes...........................................................................................................

|  | Cash: | $0.00 |
|---|---|---|

17. **Deposits of money**
    *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
    ☐ No
    ■ Yes.........................          Institution name:

|  |  |  |  |
|---|---|---|---|
| 17.1. | **Checking** | **Wells Fargo Bank xxx7620 (Wages)  Balance: -$275.00** | $0.00 |

18. **Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
    ■ No
    ☐ Yes..................          Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
    ■ No
    ☐ Yes.  Give specific information about them...................
             Name of entity:                                    % of ownership:

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
    ■ No
    ☐ Yes. Give specific information about them
             Issuer name:

21. **Retirement or pension accounts**
    *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
    ■ No
    ☐ Yes. List each account separately.
             Type of account:          Institution name:

Debtor 1      Jill S Hanauer _____      Case number *(if known)* _____

**22. Security deposits and prepayments**
   Your share of all unused deposits you have made so that you may continue service or use from a company
   *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
   ■ No
   ☐ Yes. .....................      Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
   ■ No
   ☐ Yes............      Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
   26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
   ■ No
   ☐ Yes............      Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
   ☐ No
   ■ Yes.  Give specific information about them...

| Ingleside Interests: Less than 3% (Father's Tax Shelter) | Unknown |
|---|---|

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
   *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
   ■ No
   ☐ Yes.  Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
   *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
   ■ No
   ☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**28. Tax refunds owed to you**
   ■ No
   ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
   *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
   ■ No
   ☐ Yes. Give specific information......

**30. Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security
   benefits; unpaid loans you made to someone else
   ■ No
   ☐ Yes. Give specific information..

**31. Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
   ☐ No
   ■ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| **Insurance: Home owners insurance policy** | | **$0.00** |

---

Debtor 1    Jill S Hanauer _____    Case number *(if known)* _____

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

■ No
☐ Yes. Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

■ No
☐ Yes. Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

■ No
☐ Yes. Describe each claim.........

**35. Any financial assets you did not already list**

■ No
☐ Yes. Give specific information..

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here.................................................................................................**

| | $0.00 |

| **Part 5:** | Describe Any Business-Related Property You Own or Have an Interest in. List any real estate in Part 1. |

**37. Do you own or have any legal or equitable interest in any business-related property?**

■ No. Go to Part 6.
☐ Yes.  Go to line 38.

| **Part 6:** | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest in. If you own or have an interest in farmland, list it in Part 1. |

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

■ No. Go to Part 7.
☐ Yes.  Go to line 47.

| **Part 7:** | Describe All Property You Own or Have an Interest in That You Did Not List Above |

**53. Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership

■ No
☐ Yes. Give specific information.........

**54. Add the dollar value of all of your entries from Part 7. Write that number here  .....................................**

| | $0.00 |

| **Part 8:** | List the Totals of Each Part of this Form |

| 55. | Part 1: Total real estate, line 2 ................................................................................................ | | $690,000.00 |
|---|---|---|---|
| 56. | Part 2: Total vehicles, line 5 | $0.00 | |
| 57. | Part 3: Total personal and household items, line 15 | $4,400.00 | |
| 58. | Part 4: Total financial assets, line 36 | $0.00 | |
| 59. | Part 5: Total business-related property, line 45 | $0.00 | |
| 60. | Part 6: Total farm- and fishing-related property, line 52 | $0.00 | |
| 61. | Part 7: Total other property not listed, line 54 + | $0.00 | |
| 62. | Total personal property. Add lines 56 through 61... | $4,400.00 | Copy personal property total   $4,400.00 |
| 63. | Total of all property on Schedule A/B. Add line 55 + line 62 | | $694,400.00 |

Debtor 1      **Jill S Hanauer**                                                    Case number *(if known)*

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | **Jill S Hanauer** | |
| | First Name    Middle Name    Last Name | |
| Debtor 2 | | |
| (Spouse if, filing) | First Name    Middle Name    Last Name | |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO | |
| Case number (if known) | | ☐ Check if this is an amended filing |

## Official Form 106D
# Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the **Additional Page**, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

   ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

   ☑ Yes. Fill in all of the information below.

<div style="background:black;color:white">Part 1:   List All Secured Claims</div>

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A | Column B | Column C |
|---|---|---|---|---|
| | | Amount of claim | Value of collateral that supports this claim | Unsecured portion |
| | | Do not deduct the value of collateral. | | If any |
| **2.1** Bank of the West | Describe the property that secures the claim: | $91,473.82 | $690,000.00 | $0.00 |
| Creditor's Name | **1143 Harrison Street  Denver, CO 80206  Denver County** **Residence: home** | | | |
| | As of the date you file, the claim is: Check all that apply. | | | |
| **PO Box  2078** **Denver, CO 80206** | ☐ Contingent | | | |
| | ☐ Unliquidated | | | |
| Number, Street, City, State & Zip Code | ☐ Disputed | | | |
| **Who owes the debt?** Check one. | Nature of lien. Check all that apply. | | | |
| ☐ Debtor 1 only | ☐ An agreement you made (such as mortgage or secured car loan) | | | |
| ☐ Debtor 2 only | | | | |
| ☐ Debtor 1 and Debtor 2 only | ☐ Statutory lien (such as tax lien, mechanic's lien) | | | |
| ☑ At least one of the debtors and another | ☐ Judgment lien from a lawsuit | | | |
| ☐ Check if this claim relates to a community debt | ☑ Other (including a right to offset)   **Second Mortgage** | | | |

Date debt was incurred   **12/16/2016**       Last 4 digits of account number    RED
ACT

Debtor 1  **Jill S Hanauer**

|  First Name |  Middle Name |  Last Name | Case number (if known) |
|---|---|---|---|

| | | |
|---|---|---|
| **2.2** | **Bank of the West** | |
| | Creditor's Name | |
| | **c/o Brown Dunning Walker PC** | |
| | **2000 S. Colorado Blvd Tower Two, Suite 700** | |
| | **Denver, CO 80222** | |
| | Number, Street, City, State & Zip Code | |

Describe the property that secures the claim:   **$235,965.92**   **$690,000.00**   **$235,965.92**

**1143 Harrison Street Denver, CO 80206  Denver County**
**Residence: home**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
■ Disputed

Nature of lien. Check all that apply.

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
■ Judgment lien from a lawsuit
☐ Other (including a right to **offset**) _____

Date debt was incurred  **8/2018**      Last 4 digits of account number _____

---

| | | |
|---|---|---|
| **2.3** | **Joe Hanauer** | |
| | Creditor's Name | |
| | **1200 S. Coast Highway, Suite 204** | |
| | **Laguna Beach, CA 92651** | |
| | Number, Street, City, State & Zip Code | |

Describe the property that secures the claim:   **$148,276.30**   **$690,000.00**   **$7,934.64**

**1143 Harrison Street Denver, CO 80206  Denver County**
**Residence: home**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

Nature of lien. Check all that apply.

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **Third Mortgage**

Date debt was incurred  **5/14/2018**      Last 4 digits of account number _____

---

| | | |
|---|---|---|
| **2.4** | **Well Fargo** | |
| | Creditor's Name | |
| | **PO Box 10335** | |
| | **Des Moines, IA 50306-3411** | |
| | Number, Street, City, State & Zip Code | |

Describe the property that secures the claim:   **$458,184.52**   **$690,000.00**   **$0.00**

**1143 Harrison Street Denver, CO 80206  Denver County**
**Residence: home**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

Nature of lien. Check all that apply.

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **First Mortgage**

Date debt was incurred  **08/12/2016**      Last 4 digits of account number   **RED ACT**

---

Add the dollar value of your entries in Column A on this page. Write that number here:   **$933,900.56**

Official Form 106D      Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**      page 2 of 3

Debtor 1   **Jill S Hanauer**
    First Name         Middle Name         Last Name

Case number (if known)

**If this is the last page of your form, add the dollar value totals from all pages.
Write that number here:**

| $933,900.56 |
| --- |

### Part 2:   List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:

Jill S Hanauer xxx-xx-4003,
    Debtor

---

Bank of the West, its successors and/or
assigns
      Movant,

vs.

Jill S Hanauer xxx-xx-4003;
and Tom H. Connolly, Trustee,
    Respondents.

Case No. 20-10135-KHT
Chapter 7

## AFFIDAVIT PURSUANT TO THE SERVICEMEMBERS CIVIL RELIEF ACT OF 2003

I, Laura Robles, being of lawful age, first duly sworn, hereby state as follows:

1. I am over the age of 18 and am an employee of Prober & Raphael, A Law Corporation.

2. I have performed a search of the records maintained by the Department of Defense, Defense Manpower Data Center (DMDC) and have determined that, according to DMDC records (attached hereto as **Exhibit "1"**), Debtor, Jill S Hanauer is not presently engaged in active duty military service as contemplated by the Servicemembers Civil Relief Act at 50 U.S.C. App. §521. Said data banks did not possess any information indicating that the Debtor, Jill S Hanauer is currently on active duty as to all branches of the Military.

Dated: _1/22/2020_      By: _____

                              Name: Laura Robles
                              Title: Auditor

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles

EXHIBIT E

On ____1\22\2020____ before me, _Carolyn Barraza_, Notary Public, personally appeared Laura Robles, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

Notary Seal

CAROLYN BARRAZA
Commission No. 2227779
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires  JANUARY 6, 2022



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN: XXX-XX-4003
Birth Date:
Last Name: HANAUER
First Name: JILL
Middle Name:
Status As Of: Jan-17-2020
Certificate ID: T3LPCGHP1N20HD6

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

EXHIBIT 1

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:
Jill S Hanauer xxx-xx-4003,
      Debtor(s)

Case No. 20-10135-KHT
Chapter 7

Bank of the West, its successors and/or assigns
      Movant,

vs.

Jill S Hanauer xxx-xx-4003;
and Tom H. Connolly, Trustee,
      Respondents.

## NOTICE OF HEARING OR PRELIMINARY HEARING
### OBJECTION DEADLINE: FEBRUARY 25, 2020

      YOU ARE HEREBY NOTIFIED that a Motion for Relief from Automatic Stay, a copy of which is herewith served on you, has been filed with this Court. A hearing on the motion has been set for **March 3, 2020 at 1:30 p.m.**, in Courtroom D, located at **U.S. Bankruptcy Court, U.S. Custom House, 721 19th Street, Denver, Colorado 80202**. The hearing will be conducted in accordance with the provisions of Local Bankruptcy Rule 4001-1.

      IF YOU DESIRE TO OPPOSE THIS MOTION, you must file with this Court a WRITTEN OBJECTION to the motion on or before the objection deadline stated above and serve a copy upon Christopher A. Young, attorney, whose address is listed below. If you file an objection, you are required to comply with L.B.R. 4001-1 regarding hearing procedures, including (1) the timely submission and exchange of witness lists and exhibits and (2) attendance at the above-scheduled hearing in person or through counsel, if represented.

      **If you fail to file an objection**, the scheduled hearing will be **vacated** and an order granting the relief requested will be granted without further notice to you.

Date: February 5, 2020

Respectfully submitted,

/s/ Christopher A. Young
Christopher A. Young #34207
CYLG, P.C.
1750 N. High Street
Denver, CO 80218
Phone 303-333-1252
cyoung@cylgpc.com

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

In re:

Jill S Hanauer xxx-xx-4003,
     Debtor(s)

Bank of the West, its successors and/or assigns
     Movant,

vs.

Jill S Hanauer xxx-xx-4003;
and Tom H. Connolly, Trustee,
     Respondents.

Case No. 20-10135-KHT
Chapter 7

## CERTIFICATE OF SERVICE

    I hereby certify that on February 5, 2020, a true and correct copy of the **NOTICE OF HEARING OR PRELIMINARY HEARING**, together with a copy of the **MOTION FOR RELIEF FROM AUTOMATIC STAY,** with exhibits attached, was sent by U.S. mail, proper postage affixed, or electronically, to the following:

Jill S Hanauer
1143 Harrison Street
Denver, CO 80206
Debtor

Kelsey Jamie Buechler, Esquire
999 18th St.
Ste., 1230 S
Denver, CO 80202
Attorney for Debtor

Tom H. Connolly
PO Box 68
Lafayette, CO 80026-0068
Chapter 7 Trustee

U.S. Trustee
Byron G. Rogers Federal Building
1961 Stout St., Ste., 12-200
Denver, CO 80294

*/s/Sherrie Shinkle*
Sherrie Shinkle

1